IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CATHERINE McNEILLY, | ) | |
| --- | --- | --- |
|     Plaintiff | ) | |
| | ) | |
|     v. | ) | Civil Action No. 13-1900 |
| | ) | United States Magistrate Judge |
| THE CITY OF PITTSBURGH; LUKE RAVENSTAHL; NATHAN HARPER; MICHAEL HUSS; REGINA McDONALD; MAURITA BRYANT; PAUL DONALDSON | ) | Cynthia Reed Eddy |
|     Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

### I. Introduction

Plaintiff Catherine McNeilly is a Commander with the City of Pittsburgh Bureau of Police. She filed this suit for breach of contract, retaliation for protected conduct under the First Amendment, and retaliation for protected conduct under the Civil Rights Act of 1866, made actionable by 42 U.S.C. § 1983, against Defendants the City of Pittsburgh, Luke Ravenstahl, Nathan Harper, Michael Huss, Regina McDonald, Maurita Bryant, and Paul Donaldson. Presently pending is Defendants' Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Jurisdiction, and Motion for More Definite Statement (hereafter "Motion to Dismiss"). ECF No. 24. For the reasons set forth below, this motion will be denied.[1]

### II. Factual Background

According to the facts set forth in the Amended Complaint, Commander McNeilly has been a "dedicated and decorated police officer" for the City of Pittsburgh Bureau of Police for 36 years. Amended Complaint, ECF No. 19, ¶ 1. Defendants named in Counts I and II are Luke

---

[1] In accordance with 28 U.S.C. § 636(c)(1), all parties have consented to have this matter adjudicated by a United States Magistrate Judge. ECF Nos. 5, 10.

Ravenstahl, the former Mayor of the City of Pittsburgh, and Nathan Harper, the Police Chief of the Pittsburgh Bureau of Police from October 31, 2006 until February 20, 2012. Defendants named in Count III are Michael Huss, the Director of the City of Pittsburgh's Department of Public Safety, Regina McDonald, the Acting Police Chief of the Pittsburgh Bureau of Police since February 20, 2013, Paul Donaldson, the Deputy Chief of the Pittsburgh Bureau of Police, and Maurita Bryant, the Assistant Chief of the Operations Division of the City of Pittsburgh Bureau of Police.

### A. Counts I and II

Count I alleges defendants Ravenstahl and Harper breached a 2007 settlement agreement Commander McNeilly entered into in a prior retaliation suit against Ravenstahl, Harper and the City of Pittsburgh, when in August 2012, they failed to interview her or consider her in good faith for an Assistant Chief position. Count II alleges that in response to Plaintiff's protected conduct under the First Amendment, defendants Ravenstahl and Harper engaged in retaliatory conduct by failing to interview Plaintiff or give her good faith consideration for the Assistant Chief position. Plaintiff's protected First Amendment conduct included "petitioning the government for redress of grievances based upon the lawsuit she filed against these defendants in 2006 and the underlying protected speech which was the subject of that lawsuit." Amended Complaint, ECF No. 19, ¶ 49.

Plaintiff states that on or about December 6, 2006, she was demoted from her position as a Commander to a Lieutenant in retaliation for exposing corruption within the City of Pittsburgh Bureau of Police. *Id.* at ¶ 12. She initiated a lawsuit in the United States District Court for the Western District of Pennsylvania seeking equitable relief from defendants for retaliating against her in violation of her rights under the First Amendment to the United States Constitution and

under Pennsylvania's Whistleblower Law.[2] The parties reached a settlement agreement, which includes the provision that "[i]n the event that any Assistant Chief, Deputy Chief, Chief of Police position becomes open . . . defendants agree that Commander McNeilly shall be given good faith consideration and interviewed for any such position." *Id.* at ¶ 18; ECF No. 19-1, Exhibit 1, at ¶ 3. McNeilly states she included this provision because she was concerned defendants Harper and Ravenstahl would retaliate against her by hindering her promotional opportunities.

Defendants attach to their Motion to Dismiss court documents from the prior case, including the orders closing that case after the parties negotiated a settlement agreement. On August 27, 2007, then Chief Judge Donetta W. Ambrose entered an Order for Statistical Closing in which she, having been advised that the parties has reached a settlement and would be filing a stipulation of dismissal, acknowledged the settlement agreement, in relevant part stating:

> It appears that there is no further action required by the court at this time.
>
> IT IS HEREBY ORDERED that the above-captioned case be marked closed; that nothing contained in this order shall be considered a dismissal or disposition of this action; and that should further proceedings therein become necessary or desirable, either party may initiate the same in the same manner as if this order had not been entered.

Exhibit A, Motion to Dismiss, ECF No. 24-1; Order of August 27, 2007 at ECF No. 18, Civil Action No. 06-1685.

On October 25, 2007, Chief Judge Ambrose issued an Order Entering Judgment for Plaintiff on Attorneys' Fees and directed the case closed. *Id.*, Exhibit B; Order at ECF No. 20, Civil Action No. 06-1685. In its entirety, this Order states: "The binding arbitration agreed to by the parties in their Settlement Agreement having been concluded with an Award on October 19, 2007, it is on this 25th day of October, 2007, hereby ORDERED that based on the Arbitration Award judgment is entered for Plaintiff and against Defendant in the amount of $142,735 in

---
[2] *McNeilly v. City of Pittsburgh, et al.*, Civil Action No. 06-1685 (W.D. Pa).

attorney fees and $4,833 in costs. The Clerk's Office is directed to mark this case closed and discontinued."

In or about August 2012, George Trosky was promoted to the rank of Assistant Chief. Plaintiff states that despite her seniority over Trosky, she was not interviewed for this position or given good faith consideration, in violation of her settlement agreement. Plaintiff alleges that this failure to consider her for the position of Assistant Chief is part of an "ongoing pattern of retaliation directed at McNeilly" that has "persisted through to the present date." *Id.* at ¶¶ 23-24. This retaliation "has included providing her with less favorable training opportunities and work assignments, poor performance reviews and general ostracization by other members of the Senior Command Staff." *Id.* at ¶ 24.

### B. Count III

Count III alleges that in response to Plaintiff's protected conduct under the Civil Rights Act of 1866, actionable under 42 U.S.C. § 1983, defendants Huss, McDonald, Donaldson, and Bryant engaged in retaliatory conduct by filing a Disciplinary Action Report (DAR) and written reprimand against Plaintiff for "false allegations that she was insubordinate and/or that she permitted a racially/sexually hostile work environment to exist in her precinct station." *Id.* at ¶ 52.

In or about October 2013, Plaintiff alleges that an African-American female police officer subordinate within Commander McNeilly's zone complained "that on the date George Zimmerman was acquitted of the shooting of Trayvon Martin, a white male officer taunted her, sarcastically exclaiming in a loud voice that it was 'Trayvon Martin day' and demanding to know where was her 'black hoodie.'" *Id.* at ¶ 25. McNeilly investigated the allegations and the white male officer's past conduct and concluded that his comments fit the protocol established

4

by Command Staff for someone racially biased. She therefore issued a DAR to him for violating "the City of Pittsburgh Bureau of Police's prohibition against racial discrimination and/or creating a racially hostile work environment." *Id.* at ¶ 27.

Defendants McDonald and Bryant decided the DAR should be dismissed and the matter would be submitted to mediation, which the African-American officer would be required to attend. If this officer refused, she would be subject to a DAR for directing a "profanity" at the white male officer in "response to his racially hostile comment." *Id.* at ¶ 28. The African-American officer attended the mediation under protest that she felt she had no choice but to participate.

McNeilly "expressed support for the African-American officer's position," as a victim of racially hostile remarks and work environment, which support was protected conduct under the Civil Rights Act of 1866. *Id.* at ¶ 34. In response to this expressed support, defendant Bryant "incredibly and wrongfully accused McNeilly in an official memorandum of 'permitting officers to engage in unprofessional conduct in the presence of supervisors.'" *Id.* at ¶ 37. He ordered "McNeilly to issue a memo to her subordinates '. . . providing them with the standard of conduct expected in the work place.'" *Id.* McNeilly alleges that when she objected to Bryant's memorandum and actions, she was "punished by the issuance of a Disciplinary Action Report which falsely accused her of insubordination, and which resulted in a written reprimand placed in her personnel file." *Id.* at ¶ 40. She states that defendants McDonald, Huss, and Donaldson participated in and/or approved of this DAR and written reprimand.

### III. Standard of Review

#### 1. Rule 12(b)(1) Motion to Dismiss for lack of jurisdiction

A motion to dismiss pursuant Rule 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189, 191 n.4 (3d Cir. 2011) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991)). In considering a Rule 12(b)(1) motion, "the district court may not presume the truthfulness of plaintiff s allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)).

#### 2. Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b) (6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant

has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id.*

As the Court of Appeals for the Third Circuit explained in *Fowler*, 578 F.3d at 210–11:

> . . . The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.
>
> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal* . . . [the] "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*See also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, ––– U.S., –––132 S.Ct. 1861 (2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D. Pa. 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

When ruling on a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted," courts generally do not consider materials outside the pleadings, but only the allegations of the complaint, attached exhibits, and matters of public record. *Pension Benefit Guar. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 559-60 (3d Cir. 2002). Factual allegations within documents described or identified in the complaint may be considered if the plaintiff's claims are based upon those documents. *Id.* Documents referred to in complaint which are central to the claim

are considered part of the pleading, even if not attached to the complaint. *Pryor*, 288 F.3d at 559-60. A document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint." *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). *See also U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 n.1 (3d Cir. 2002) (as plaintiff alleges breach of an agreement, the agreement is "a document integral to or explicitly relied upon in the complaint [and] may be considered without converting the motion to dismiss into one for summary judgment"). A court may also take judicial notice of public records and proceedings in other courts that relate to matters at issue. *See Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F.Supp.2d 663, 675 (D.Del. 2012) (citing *M & M Stones Co. v. Pa. Dep't of Envt'l Prot.*, 388 F. App'x 156, 162 (3d Cir. 2010)).

IV. **Legal Analysis**

A. **Count I**

1. **Ancillary Jurisdiction**

Ancillary jurisdiction extends the federal courts' limited jurisdiction in specific circumstances. Federal courts do not have jurisdiction to enforce a settlement agreement just because the agreement resulted from a claim in federal court. *See Nelson v. Pennsylvania*, 125 F. App'x 380 (3d Cir. 2005); *Bryan v. Erie Cnty. Office of Children and Youth*, 752 F.3d 316, 322 (3d Cir. 2014) (district courts have no inherent subject matter jurisdiction over suits concerning the breach of a settlement agreement reached in a federal civil proceeding). However, if the parties adopt a settlement agreement but their case is not dismissed by the court, the court retains subject matter jurisdiction to adjudicate issues that arise in finalizing and enforcement of the agreement. *Bryan*, 752 F.3d at 322 (the "critical distinction" in determining whether there is

ancillary jurisdiction for enforcement of a settlement agreement is whether the suit has been dismissed).

In *Kokkonen v. Guardian Life Ins. Co.*, the Supreme Court observed that "[g]enerally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent . . . ; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees . . . ." 511 U.S. 375, 379-80 (1994) (citations omitted).

A claim is factually interdependent if it is a continuation of a dismissed or settled suit, and relies on the same facts. *See Kokkonen*, 511 U.S. at 381 (regarding claims for violation of a settlement agreement, "[t]he facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit."); *Peacock v. Thomas*, 516 U.S. 349, 355-56 (1996) (holding there was "insufficient factual dependence" to "justify the extension of ancillary jurisdiction" over the second claim). The defendants' alleged violation of McNeilly's settlement agreement is the basis for her breach of contract claim. This violation, not interviewing McNeilly for the Assistant Chief position, relies on a different and distinct set of facts than the original claim upon which her settlement was based. There is no ancillary jurisdiction on the basis of factual interdependence.

To retain jurisdiction in order to enable the court to "function successfully," the court must specify that it retains ancillary jurisdiction in its order of dismissal.[3] *See Bryan*, 752 F.3d at

---

[3] *Kokkonen* stated, 511 U.S. at 381:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal - either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the

10

322 (parties must "incorporate the terms of the settlement into the court's dismissal order."); *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 274 (3d Cir. 1999) ("approval of a settlement agreement does not suffice to make the settlement part of the dismissal order"); *Patterson v. GlaxoSmithKline Pharm. Co.*, 2011 WL 3156558, *2 (E.D.Pa. 2011) ("[T]he court does not have jurisdiction to enforce the settlement agreement unless the parties' obligation to comply with the terms of the agreement was made part of the dismissal order.") (citing *Kokkonen*, 511 U.S. at 381). As a general rule the "dismissal of the first action terminate[s] federal jurisdiction. An action to enforce the settlement then becomes a separate contract dispute, based on the agreement." *Nelson*, 125 F. App'x at 382.

In *Shaffer v. GTE North, Inc.*, the court found no ancillary jurisdiction because "the dismissal order . . . began by simply adverting to the counsel-reported settlement without the incorporation of any specific settlement terms." 284 F.3d 500, 503 (3d Cir. 2002). The court did not expressly retain jurisdiction to enforce a final settlement agreement in its dismissal order, but merely referenced the settlement agreement. *Id. See also In re Phar-Mor, Inc.*, 270 F.3d at 274-75 ("While the district court did approve the terms of the Settlement Agreement, the Supreme Court has made clear that mere approval of a settlement agreement does not confer subject matter jurisdiction to enforce that agreement.").

The dismissal order in *Shaffer* used similar language to Chief Judge Ambrose's order dismissing McNeilly's 2007 lawsuit, which acknowledged the settlement but did not explicitly retain jurisdiction. *See Shaffer*, 284 F.3d at 503 ("Counsel having reported to the court that this action has been settled, it is hereby ordered that this action is dismissed without costs and without prejudice . . ."). The Court of Appeals rejected Mr. Shaffer's argument that language in

---

agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

11

the order contemplating "the possibility of reinstating the lawsuit if the settlement had not been carried out . . . somehow conferred jurisdiction on the district court to grant the entirely different relief of enforcing the settlement agreement," and held "that language in a dismissal order providing for the reinstatement of an action if a settlement agreement is not consummated does not satisfy . . . *Kokkonen* precondition for the enforcement of the settlement agreement itself." *Id*. at 504.

While Judge Ambrose's Order of August 27, 2007 statistically closing Commander McNeilly's previous action stated that "nothing contained in this order shall be considered a dismissal or disposition of this action," the case was ordered closed two months later, on October 25, 2007 ("The Clerk's Office is directed to mark this case closed and discontinued."). Order for Statistical Closing, ECF No. 24-1, Exhibit A; Order Entering Judgment for Plaintiff, ECF No. 24-2, Exhibit B. There is nothing in either order explicitly retaining jurisdiction, only a reference to the settlement agreement. Because this Court did not retain jurisdiction within the parameters of *Kokkonen*, and the case was closed and discontinued, any subsequent action related to the terms of the settlement agreement must have some independent basis for asserting federal jurisdiction.

### B. Count II

#### 1. 12(b)(6) Motion to Dismiss

To state a claim for retaliatory acts in response to conduct protected by the First Amendment, a plaintiff must show "(1) that [s]he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub v. Township of Indiana,* 385 F.2d 274, 282 (3d Cir. 2004) (internal

citations omitted). Plaintiff must set forth enough facts to make a plausible claim of relief in light of this standard for First Amendment retaliation. *See Twombly*, 550 U.S. at 570.

Plaintiff alleges that her constitutionally protected activity consisted of "petitioning the government for redress of grievances based upon the lawsuit she filed against these defendants in 2006 and the underlying protected speech which was the subject of that lawsuit, i.e. objecting to corrupt practices within the Bureau of Police." Amended Complaint, ECF No. 19, ¶ 49. She states defendants Harper and Ravenstahl retaliated against her by failing to interview her for an Assistant Chief position in violation of her settlement agreement, and by "providing her with less favorable training opportunities and work assignments, poor performance reviews and general ostracization by other members of the Senior Command Staff." *Id.* at ¶¶ 23-24. However, defendants challenge in their Motion to Dismiss whether Commander McNeilly's constitutionally protected activity was the direct cause of defendants' retaliatory acts.

A plaintiff can show causation through "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link," or (3) "from the 'evidence gleaned from the record as a whole' . . . ." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d. Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). Cases that base proof of causation on temporal proximity between the plaintiff's protected activity and the employer's retaliation "uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (When evaluating causation on temporal proximity alone, action taken "20 months later suggests, by itself, no causality at all"). However, the "mere passage of time is not legally conclusive proof against retaliation." *Robinson v. Southeastern Pa. Transp. Auth*, 982 F.2d 892, 894 (3d Cir. 1993). Instead, "timing

13

plus other evidence may be an appropriate test where the temporal proximity is not so close as to be unduly suggestive." *Planters Lifesavers Co.*, 206 F.3d at 280 (internal quotations omitted). Other evidence can include "circumstantial evidence of a 'pattern of antagonism' following the protected conduct" or "other types of circumstantial evidence." *Id.* at 280-81 (quoting *Kachmar v. SunGard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997)). *See also Kovac v. Pennsylvania Tpk. Comm'n*, 444 F. App'x 588, 591 (3d Cir. 2011) (reviewing cases where circumstantial evidence was deemed sufficient to withstand a motion for summary judgment, including when "protected activity was well documented," or when "other similarly situated employees who had not engaged in protected activities were not terminated").

Whether the amount of evidence is sufficient to sustain the burden of causation is a fact sensitive inquiry, and there is no specific test of what "type of evidence . . . can be considered probative of the causal link." *Planters Lifesavers Co.*, 206 F.3d at 281. For example, courts have found the requisite causation when two years elapsed between the constitutionally protected activity and the retaliatory acts, because of continued retaliatory acts throughout this time. *See Woodson v. Scott Paper*, 109 F.3d 913, 921 (3d Cir. 1997) (holding the plaintiff could only prevail if there was also a "pattern of antagonism" because a two year gap is too attenuated); *Robinson*, 982 F.2d at 894-95 (finding causation even though two years had passed because the plaintiff experienced harassment throughout that time period).

Defendants argue that there is no temporal proximity between Plaintiff's constitutionally-protected activity and the alleged retaliation, and therefore she cannot plausibly prove causation. They state that because the constitutionally-protected activity occurred in 2006, and the retaliation, namely the failure to interview Plaintiff for the Assistant Chief position, occurred in 2012, Plaintiff cannot plausibly prove that her whistleblowing caused the defendants' failure to

interview her. However, Plaintiff alleges that defendants' failure to interview her "was part and parcel of an ongoing pattern of retaliation directed at McNeilly for the protected conduct she engaged in under the First Amendment," and that this retaliation "has persisted through to the present date." *Id.* at ¶¶ 23-24. Therefore, the Court cannot say that McNeilly's claim is not plausible on the grounds that there is no temporal proximity, because Plaintiff is alternatively able to prove causation through circumstantial evidence and/or by providing evidence of an ongoing pattern of retaliation. Plaintiff's First Amendment retaliation claim will not be dismissed at this stage of the proceedings, for failure to state a claim.

### 2. Supplemental Jurisdiction

Count I does not present independent grounds for federal subject matter jurisdiction, so it is necessary to evaluate whether there is supplemental jurisdiction over Count I, because Counts I and II arise out of the same nucleus of facts.[4]

District courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). To establish supplemental jurisdiction pursuant to section 1367's "same case or controversy" standard, a plaintiff must meet the following requirements:

> "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court." . . . The state and federal claims must derive from a common nucleus of operative facts, and the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding.

*MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Whether two claims arise out of

---

[4] Defendants correctly argue that Count III does not confer supplemental jurisdiction over Count I, because the factual predicate of the two counts are not connected in any significant way.

a "common nucleus of operative facts" is case-specific. *Nanavati v. Burdette Tomlin Mem. Hosp.,* 857 F.2d 96, 105 (3d Cir. 1988), *cert. denied*, 489 U.S. 1078 (1989).

Defendants cite *Lyon v. Whisman* to support their proposition that there is no supplemental jurisdiction based on an employer-employee relationship for state contract and tort claims otherwise unrelated to a federal statutory claim. 45 F.3d 758, 759 (3d Cir. 1995). In that case the state contract and tort claims were based on the employer's failure to provide the Plaintiff's promised bonus, and the federal statutory claim was based on the employer's failure to pay Plaintiff overtime wages. *Id*. In contrast, in this case Plaintiff alleges that the Defendants' failure to interview her for the Assistant Chief position was both in retaliation to her protected First Amendment conduct *and* in violation of her settlement agreement.

The causes of action for both Counts I and II, in part, arise out of the allegation that defendants Harper and Ravenstahl failed to interview or give good faith consideration to Plaintiff for an Assistant Chief position. Both the breach of contract claim and the retaliatory conduct claim are based on the same "nucleus of operative facts" – defendants breached their contract and engaged in retaliatory conduct by failing to interview Plaintiff or give her good faith consideration for the Assistant Chief position -- and would "ordinarily be expected to be tried in one judicial proceeding." Therefore, this Court has supplemental jurisdiction over Count I of Plaintiff's Amended Complaint.[5]

---

[5] Defendants also argue that this Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(2) (federal court may decline jurisdiction where the state "claim substantially predominates over the claim or claims over which the district court has original jurisdiction") because the remedies for Count I and Count II are so different. Plaintiff is not able to recover attorney's fees for Count I, her breach of contract claim, but is able to recover attorney's fees for Counts II and III. If Plaintiff prevailed the Court would have to "determine which of the fees were associated" with the different claims. The difference in potential remedies does not make the counts so dissimilar as to defeat supplemental jurisdiction where both Counts I and II arise out of the same facts and would ordinarily be tried in one judicial proceeding, and Defendants offer no authority in support of this proposition.

### 3. 12(e) Motion for a More Definite Statement

Relief under Rule 12(e) is appropriate only when "a pleading fails to specify the allegations in a manner that provides sufficient notice." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).[6] Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." A Rule 12(e) motion may be granted "when a complaint does not disclose the facts underlying a plaintiff's claim for relief such that the defendant cannot reasonably be expected to frame a proper, fact-specific defense." *Miller v. Atlantic Freight Sys., Inc.*, 2013 WL 1308235, *3 (M.D. Pa. 2013) (citing *Thomas v. Independence Tp.,* 463 F.3d 285, 301 (3d Cir. 2006)). However, all that is necessary under the Federal Rules of Civil Procedure is a notice of claims with a general factual basis. *Bonds v. GMS Mine Repair & Maintenance, Inc.*, 2014 WL 66413, *5 (W.D. Pa. 2014) ("The catch-all allegation does not render the Amended Complaint so vague or ambiguous that GMS cannot respond even with a simple denial").

Defendants argue that Plaintiff's allegations in Count II of the Amended Complaint are "so vague and ambiguous that Defendants cannot prepare an adequate response." Brief Supporting Motion to Dismiss, ECF No. 25, 12. They state that Plaintiff's First Amendment retaliation claim is too vague, specifically regarding the defendants' retaliatory conduct. Plaintiff alleges in her Amended Complaint that her First Amendment rights were violated when the defendants did not interview her for the Assistant Chief position. *See* Amended Complaint, ECF. No. 19, ¶ 49. She does not specify what other retaliatory acts she believes defendants

---

[6] The Supreme Court's ruling in *Bell Atl. Corp. v. Twombly* does not change the standard the Court uses for Rule 12(e) motions in *Swierkiewicz*. 550 U.S. 544, 547 (2007) ("This analysis does not run counter to *Swierkiewicz v. Sorema N. A.,* which held that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.' Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

committed under Count II, but because their failure to interview her is adequate to state a claim, it is enough for the defendants to admit or deny.

Defendants also state that they cannot ascertain "which of the Defendants committed which of the acts." Plaintiff clearly states in her Amended Complaint which defendants she is implicating for each count of her complaint, and the actions for which they are accountable. *See id.* at ¶¶ 5-11, 21, 28, 39-43. Further, Plaintiff is not asserting an independent cause of action based on any of the additional retaliatory acts, so none of the named Defendants is materially prejudiced or prevented from answering the Amended Complaint by not having specific details regarding each such act. Plaintiff is not required to plead her evidence, only to state sufficient facts for each claim for Defendants to be able to respond to and answer the claims asserted. Therefore, the facts Commander McNeilly alleges in Count II are specific enough to state a plausible claim and provide defendants sufficient notice. Defendants' Motion for a More Definite Statement will be denied.

## V. Conclusion

For the reasons set forth above, the Court HEREBY DENIES defendants' Motion to Dismiss (ECF No. 24). Defendants' Rule 12(b)(1) motion will be denied because there is supplemental jurisdiction over Count I, a breach of contract claim, because it arises out of the same facts as Count II, a federal claim. Defendants' Rule 12(b)(6) motion will be denied because Plaintiff states a claim for which relief can be granted in Count II, that defendants committed retaliatory acts in response to Plaintiff's protected First Amendment conduct, because she claims they acted within an "ongoing pattern of retaliation," which adequately alleges causation. Defendants' Rule 12(e) motion will be denied because Plaintiff's allegations in Count II are not so vague and ambiguous that defendants are unable to respond.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Date: August 22, 2014

cc: all counsel of record